# W. M. RUSSELL, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

### Springfield Court of Appeals, December 11, 1913.

1. **RAILROADS: Causing Sickness to Passenger: Liability.** In an action against a railroad company for sickness occasioned by 'riding in the smoking car at the direction of the colored porter, where the plaintiff passenger made no complaint or protest to the conductor or other person and no effort was made by the passenger to go into another car, where he could have gone after the train started, *held* there could be no recovery.

2. **TRIAL: Directing a Verdict: Duty of Court.** Where only one conclusion can be drawn it is the duty of the court to declare the legal effects of uncontroverted facts and .direct a verdict.

Appeal from Greene Circuit Court.—*Hon. Alfred Page,* Judge.

REVERSED.

*W. F. Evans, Mann, Todd & Mann* for appellant.

(1) The verdict is excessive. Smith v. Railroad, 127 Mo. App. 53; Kirby v. Railroad, 146 Mo. App. 304; Clifton v. Railroad, 232 Mo. 708. (2) The court erred in refusing at the close of plaintiff's case, and again at the close of all the evidence, to instruct the jury at the request of defendant to find the issues for the defendant. Brezewitz v. Railroad, 87 S. W. 127; Webber v. Railroad, 100 Mo. 194; Mitchell v. Railroad, 51 Mich. 236, 47 Am. Rep. 566; Detroit v. Railroad, 23 Wis. 152, 99 Am. Dec. 141.

*Hamlin* and *Seawell* for respondent.

(1) The question whether the respondent was guilty of such negligence as to prevent his recovery, was submitted to the jury under proper instructions

and the verdict of the jury is binding on the appellate court. Taylor v. Railroad, 42 L. R. A. 110; Railroad v. Raines, 132 Am. St. Rep. 404; 3 Thompson on Negligence, secs. 2833, 2850, 2879, 2931. (2) Respondent was not negligent in not entering another car. McDonald v. Railroad, 127 Mo. 38; Roark v. Railroad, 163 Mo. App. 705.

STURGIS, J.—Plaintiff sued the defendant because of being compelled to ride in a smoking car on one of its trains from St. Louis to Springfield, Missouri, the effect of which was to make him sick from the tobacco smoke. He also complains that this car was dirty but there was little proof of this and that charge was not submitted to the jury. He was fifty-two years old and was traveling from Knoxville, Tennessee, to Springfield, Missouri, on a first-class ticket. Plaintiff's evidence is that when he got to St. Louis he pased through the gate at Union Station and to defendant's train which left there about nine o'clock in the morning arriving at Springfield in the afternoon; that when he came to the rear end of the chair car, the brakeman and porter directed him to go on to the next car. There was no pretense, however, that the brakeman knew that plaintiff objected to going to the smoking car or that he was susceptible to sickness from any such cause. On plaintiff's going to and discovering that the next car was the smoking car, he states that he went out on the platform and informed the porter, who had evidently followed him there, that tobacco smoke would make him sick and objected to riding in such car, but that the porter told him that it would not bother him and insisted and ordered him to go back in the smoker. He also says that the conductor soon came along there and went up the steps, opened the door to the chair car next to the smoker and went in, shutting the door; that plaintiff tried to follow him into the chair car but found that the door

was locked and the conductor merely looked around and went on without opening it. Plaintiff, however, said nothing to the conductor and there is no pretense that he knew of plaintiff's objection to riding in the smoker or his susceptibility to sickness from such cause. Plaintiff then remained in the smoker without further protest to anyone and says that he became sick about a half hour after the train pulled out. It is, therefore, evident that no one in charge of the train, except the colored porter, knew at any time anything of plaintiff's objection to riding in the smoker or of the possible effects of tobacco smoke on him. It is further shown that only a few passengers were in this smoking car on that trip.

Defendant proved, without contradiction, that this was one of its fast and best trains out of St. Louis; that it carried none but first class passengers and all the cars were designed and suitable for that class; that in receiving passengers at St. Louis, the rule was that the brakeman stayed at the rear end of the chair car and when men, not accompanied by women or children, came along, that he frequently directed them forward to the smoker so as to save the chair car for women and children, but that no one who objected was ever coerced into going to the smoker or staying there; that the door of the chair car next to the smoker was kept locked so that if any intoxicated person should happen to get on the smoker he would not pass back to the chair car unnoticed. These were certainly reasonable regulations and well calculated to benefit the traveling public. It was also shown that this was a vestibule train; that the car doors were all unlocked immediately after the train started and that passengers were free to go from one car to another at will throughout the day's journey. It took about eight hours to run from St. Louis to Springfield, during which time plaintiff says he remained in the smoker and was sick and unable to eat in consequence thereof. He frankly

admits, however, that after the train started he made
no complaint to anyone, not even the porter, and made
no effort or request to go to another car; he. made no
mention of his sickness or discomfort from riding in
the smoker to the conductor, collector, or brakeman,
and none to the porter after the train started or he be-
came sick.  Nor is it claimed that his sickness was such
as to apprise anyone, trainmen or fellow passengers,
of his being so.  The following questions and answers
are taken from plaintiff's evidence:    ''Q.  So, you
never said anything to anybody except the porter?  A.
I made my complaint before I got on the train.    Q.
And never made any complaint after the train started?
A.  No, sir.  Q.  It was all before the train started?
A.  Yes, sir.  .  .  .  Q.  The thing that affected you
was the tobacco smoke?  A.  Yes, sir.  Q.  Don't you
know as soon as that train left St. Louis, as soon as it
pulled out of the shed the door into this car back of
you, the chair car, was open?  A.  No, sir, I didn't
know it.  There wasn't much crowd in there before the
train started.  Q.  After that train started did you
go to the door?  A.  No, sir; I thought they had given
me to understand I had to ride there.  Q.  Who had
given you to understand that?  A.  The colored man.
Q.  You just rested right there?  A.  I took it for
granted there was where they were going to make me
ride.  .  .  .  Q.  You never attempted to get.out of
that smoking car from that time on?  A.  I didn't try
to get off the train, but I came out on the platform at
Newberg, where they changed engines.  Q.  Did you
attempt to go back in the other car then?  A.  No, sir.''

Plaintiff offered no evidence except his own.  He
further testified that he was fifty-two years old, had
made three trips to east Tennessee, going over vari-
ous railroads, and had made frequent trips on the
train from his home at Republic, Missouri, to Spring-
field.  He showed himself familiar with the usual inci-
dents of railroad travel and the titles and general au-

thority of the various employees having charge of the train. It was shown, if such proof was necessary, that the colored porter merely looks after the wants and comfort of the passengers and had no authority to direct passengers where to ride. All the trainmen were examined as witnesses and none of them had any recollection whatever of the occurrence testified to by plaintiff.

Under these facts the court should have sustained the demurrer to the evidence as requested. This case is almost *sui generis*. Only one case has been discovered by the diligence of able counsel on either side where the facts resemble this one (Brezewitz v. Railroad, 87 S. W. (Ark.) 127.) There the facts are similar—the plaintiff was boarding an Iron Mountain train at St. Louis to go to Texas; tried to go into the chair car; was ordered by the porter to go to the smoker; obeyed the order; rode in the smoker all the way; got sick; made no further complaint, etc. The court denied a recovery and said: "According to his own statement he voluntarily submitted to the discomfort of the smoking car without objection or complaint, and cannot therefore claim damages therefor. He was not justified in accepting the directions given him by the train porter at the station as to the car which he should enter as a command to remain therein throughout his journey. The train was in charge of the conductor and when appellant found that the car to which he had been assigned by the porter was uncomfortable and not such accommodations as he was entitled to on his ticket, he should have appealed to the conductor for more comfortable quarters. Failing to do so he is deemed to have voluntarily accepted the place assigned him with its discomforts. He had reached the age of discretion and cannot be allowed to claim damages on account of a situation caused by a mistake of the porter which he accepted and gave the railroad company through its proper officers in charge

of the train no opportunity to correct.'' [See Hemingway v. Railroad, 7 Am. St. Rep. 823, and note thereto.]

The respondent relies on Roark v. Railroad, 163 Mo. App. 705, 147 S. W. 499, where plaintiff sued for damages caused by riding in a car not sufficiently heated and the court held that she would not be denied recovery for failure to request to be allowed to go to another car or for not taking advantage of sufficient wrappings. It is there shown, however, that she did complain to the conductor as to the car being too cold and in effect asked that it be heated. Besides this, the temperature of a car is a matter open to the observation of the trainmen as well as to anyone and they ordinarily need no information or warning of such condition. The case of Taylor v. Wabash Ry. Co., 42 L. R. A. 110, a Missouri case but never officially reported, is like the Roark case, supra, being a cold car case, where the passenger remonstrated with the conductor as to the car being too cold. The difference between such cases and this one is well illustrated by the charge to the jury, affirmed as good law, in Hastings v. Railroad, 53 Fed. 224, as follows: "If they (trainmen) knew, without being told, that they were neglecting the car, and showed a disposition to disregard the comfort of the passengers, so that a passenger would deem it unnecessary to give the information, for the mere purpose of giving information, it would not be regarded, under those circumstances, as being negligence not to complain. If the car was left in charge of the brakeman, who was not attending to his duty, and the conductor was ignorant of that fact, and the passengers had an opportunity to tell this conductor, and call his attention to it, and ask for relief, but suffered him to remain in ignorance, and made no complaint, then it would be such negligence as would preclude the passenger from any right to complain.''

This proposition is also recognized in 3 Thompson on Negligence, sec. 2833.

We need not go to the extent of holding that complaint to the brakeman would not have been sufficient, but we do hold that the mere direction of a colored porter to remain in the smoker and that the smoke would not bother him, where no complaint was made to or information had by anyone thereafter and after he found out he was actually getting sick, and no effort made to go to the other car where he could have gone at will any time after the train started, precludes a recovery under the other facts of this case.

In this view of the case it is not material whether the instructions given were correct or not. However, we find that the fourth instruction, given for defendant, directs a finding for the defendant if the jury found that, "the passageway from said smoking car to the chair car or other coaches in said train was open and that plaintiff could have ascertained said fact that said door was open by the exercise of reasonable care on his part and that he could have passed from said smoking car into the other cars of said train at any time he saw fit, and failed to do so; or, if they found that when plaintiff ascertained and determined that riding in the smoking car would make him sick he did not appeal to the conductor in charge of said train for permission to leave said smoking car and ride in another coach, and was refused such admission, but that he voluntarily, after being directed into said coach remained there during said trip without either leaving the same or seeking permission to do so from the conductor in charge of said train."

Now these are the uncontradicted facts of the case and the jury could not find otherwise. Why then cast doubt on the matter by submitting it as a doubtful proposition to the jury? No such instruction should ever be given to a jury. It is the duty of the court to declare the legal effect of uncontradicted facts where

only one conclusion can be drawn. No court should leave it to a jury to find a specific verdict when the facts which the jury are to find as compelling such verdict are undisputed. In such case the duty devolves on the court to direct a verdict. It results that this case is reversed.

*Robertson, P. J.,* concurs. *Farrington, J.,* concurs.